IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| EMPLOYERS MUTUAL CASUALTY COMPANY, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Civil Action No. 15-0054-CG-B |
| KENNY HAYES CUSTOM HOMES, LLC., KENNY HAYES, individually, DAVID CHANCELLOR, individually, JOE NELSON, individually, TAMMY NELSON, individually. | ) ) ) ) ) ) ) | |
| Defendants. | ) ) | |

## MEMORANDUM OPINION AND ORDER

This matter is before the Court on Plaintiff's motion for summary judgment (Doc. 47), Defendants' responses in opposition (Docs. 49, 50), and Plaintiff's replies (Docs. 51, 52). For the reasons explained below, the Court finds that Plaintiff has not shown as a matter of law that it is entitled to a declaration that it does not owe a duty to defend or indemnify Kenny Hayes Custom Homes, LLC, Kenny Hayes and/or David Chancellor in the underlying state court action. Accordingly, Plaintiff's motion for summary judgment will be denied.

### FACTS

The underpinnings of this insurance coverage declaratory judgment action lie

in a breach of contract and tort claim lawsuit filed on May 19, 2014, in the Circuit Court of Wilcox County, Alabama, Docket No. 14-900046 (the "underlying action"). (Doc.47-2).   In the underlying action, Joe and Tammy Nelson sued Kenny Hayes Custom Homes, LLC, Kenny Hayes and/or David Chancellor (referred collectively herein as "Kenny Hayes Homes" or "builder") for breach of contract, negligence, wantonness or willfulness, negligent hiring or supervision, fraud, breach of warranty and deceptive trade practices arising from the construction of the Nelsons' home. (Doc. 47-2).   According to the complaint in the underlying action, the Nelsons entered into a contract on March 6, 2012 for the construction of their home by Kenny Hayes Homes. (Doc.47-2, ¶ 18).   Throughout the construction process and subsequent to completion, the Nelsons allege numerous failures of Kenny Hayes Homes to adequately supervise the construction causing the Nelsons to suffer "extreme mental anguish and emotional distress" and resulting in increased costs of construction and serious latent defects with the home, including water intrusion. (Doc. 47-2).   Regarding the alleged water intrusion, the Nelsons testified that when water would come in they would mop it up with towels and sometimes leave buckets to catch the water. (Doc. 47-7, p. 7; Doc. 47-8, p. 5).   Some of the walls hare stained from water, "where the water poured down and just stripped all the stain and everything off." (Doc. 47-7, p. 7; Doc. 47-8, p. 5).   The Nelsons also contend that the exterior walls are damaged because of the water pouring in, but no one has told them it is damaged. (Doc. 47-8, p. 6).   The Nelsons did not assert any claims for damage to any furniture, rugs or other personal property. (Doc. 47-8, p. 6).   Mr.

Nelson reports experiencing mental anguish because of having leaks every time it rains, but Mr. Nelson has not gone to a doctor for the mental anguish. (Doc. 47-7, p. 7). Mrs. Nelson also reports suffering mental anguish and testified that she went to a doctor and was prescribed medicine to help her nerves. (Doc. 47-8, p. 7). Their mental anguish also results from their breach of contract claim and began for Mrs. Nelson when they had to go borrow money and they could not get money to finish the house. (Doc. 47-7, p. 8, Doc. 47-8, p. 7). In November 2012, the Nelsons and Kenny Hayes Homes mutually agreed to end the construction contract and release each other from the obligations under the contract. (Doc. 50-6, pp. 6, 7-8).

Employers Mutual Casualty Company ("EMCC") issued a commercial general liability insurance policy (Doc. 47-3) to Kenny Hayes Homes and has been providing a defense to Kenny Hayes Homes in the underlying action pursuant to a strict reservation of rights. EMCC filed the current action in this Court on February 2, 2015 seeking a declaration that it has no duty to defend or indemnify Kenny Hayes Homes in the underlying action. (Doc. 1).

The insurance policy provides coverage for "sums that the insured becomes legally obligated to pay as damages because of 'bodily injury' or 'property damage.' " (Doc. 47-3, p. 25). The policy specifies that it applies to bodily injury and property damage only if:

> (1) The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory";
> (2) The "bodily injury" or "property damage" occurs during the policy period; …

(Doc. 47-3, p. 25).  The policy defines "bodily injury" as "bodily injury, sickness or disease sustained by a person, including death resulting form any of these at any time." (Doc. 47-3, p. 37).  "Property damage" is defined as:

a. Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or
b. Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it.

 (Doc. 47-3, p. 39).  "Occurrence" is defined as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions." (Doc. 47-3, p. 38).

The policy contains several exclusions that EMCC contends apply: contractual liability exclusion, damage to property exclusion, damage to impaired property or property not physically injured exclusion, professional liability exclusion and the absolute exclusion for fraud, misrepresentation, deceit or suppression or concealment of fact.

Exclusion 2(b), "Contractual Liability" excludes the following:

"Bodily injury" or "property damage" for which the insured is obligated to pay damages by reason of the assumption of liability in a contract or agreement. This exclusion does not apply to liability for damages:
(1) That the insured would have in the absence of the contract or agreement; or
(2) Assumed in a contract or agreement that is an "insured contract", provided the "bodily injury" or "property damage" occurs subsequent to the execution of the contract or agreement. Solely for the purposes of liability assumed in an "insured contract", reasonable attorney fees and necessary litigation expenses incurred by or for a party other than an insured are deemed to be damages because of "bodily injury or property damage", provided:

4

     (a) Liability to such party for, or for the cost of, that party's defense has also been assumed in the same "insured contract"; and

     (b) Such attorney fees and litigation expenses are for defense of that party against a civil or alternative dispute resolution proceeding in which damages to which this insurance applies are alleged.

(Doc. 47-3, p. 26).

Exclusion 2(j), "Damage to Property" excludes the following:

"Property damage" to:
     (1) Property you own, rent or occupy, including any costs or expenses incurred by you, or any other person, organization or entity, for repair, replacement, enhancement, restoration or maintenance of such property for any reason, including prevention of injury to a person or damage to another's property;

     (2) Premises you sell, given away or abandon, if the "property damage" arises out of any part of those premises;

     (3) Property loaned to you;

     (4) Personal property in the care, custody or control of the insured;

     (5) That particular part of real property on which you or any contractors or subcontractors working directly or indirectly on your behalf are performing operations, if the "property damage" arises out of those operations; or

     (6) That particular part of any property that must be restored, repaired or replaced because "your work" was incorrectly performed on it.

Paragraphs (1), (3) and (4) of this exclusion do not apply to "property damage" (other than damage by fire) to premises, including the contents of such premises, rented to you for a period of 7 or fewer consecutive days. A separate limit of insurance applies to Damage To Premises Rented To You as described in Section III – Limits Of Insurance.

Paragraph (2) of this exclusion does not apply if the premises are "your work" and were never occupied, rented or held for rental by you. Paragraphs (3), (4), (5) and (6) of this exclusion do not apply to liability assumed under a sidetrack agreement.

Paragraph (6) of this exclusion does not apply to "property damage" included in the "products completed operations hazard".

(Doc. 47-3, pp. 28-29).  Under the policy, "products-completed operations hazard"

"[i]ncludes all 'bodily injury' and 'property damage' occurring away from premises

you own or rent and arising out of 'your product' or 'your work' except:"

> (1) Products that are still in your physical possession; or
> (2) Work that has not yet been completed or abandoned. However, "your work" will be deemed completed at the earliest of the following times:
>> (a) When all of the work called for in your contract has been completed.
>> (b) When all of the work to be done at the job site has been completed if your contract calls for work at more than one job site.
>> (c) When that part of the work done at a job site has been put to its intended use by any person or organization other than another contractor or subcontractor working on the same project.
>> (d) Work that may need service, maintenance, correction, repair or replacement, but which is otherwise complete, will be treated as completed.

(Doc. 47-3, p. 39).  "Products-completed operations hazard" does not include "bodily

injury" or "property damage" arising out of:

> (1) The transportation of property, unless the injury or damage arises out of a condition in or on a vehicle not owned or operated by you, and that condition was created by the "loading or unloading" of that vehicle by any insured;
> (2) The existence of tools, uninstalled equipment or abandoned or unused materials; or
> (3) Products or operations for which the classification, listed in the Declarations or in a policy schedule, states that products-completed operations are subject to the General Aggregate Limit.

(Doc. 47-3, p. 39).

Exclusion 2(m), "Damage To Impaired Property Or Property Not Physically

Injured" excludes "property damage" to "impaired property" or property that has not

been physically injured, arising out of:

6

(1) A defect, deficiency, inadequacy or dangerous condition in "your product" or "your work"; or

(2) A delay or failure by you or anyone acting on your behalf to perform a contract or agreement in accordance with its terms.

This exclusion does not apply to the loss of use of other property arising out of sudden and accidental physical injury to "your product" or "your work" after it has been put to its intended use.

(Doc. 47-3, p. 29).  Under the Policy "impaired property" means tangible property,

other than "your product" or "your work", that cannot be used or is less useful

because:

a.  It incorporates "your product" or "your work" that is known or thought to be defective, deficient, inadequate or dangerous; or

b.  You have failed to fulfill the terms of a contract or agreement;

If such property can be restored to use by the repair, replacement, adjustment or removal of "your product" or "your work"; or your fulfilling the terms of the contract or agreement.

(Doc. 47-3, p. 37).

The exclusion "Contractors - Professional Liability" provides the following:

1.  This insurance does not apply to "bodily injury", "property damage" or "personal and advertising injury" arising out of the rendering of or failure to render any professional services by you or on your behalf, but only with respect to either or both of the following operations:

a.  Providing engineering, architectural or surveying services to others in your capacity as an engineer, architect or surveyor; and

b.  Providing, or hiring independent professionals to provide, engineering, architectural or surveying services in connections with construction work you perform.

2.  Subject to paragraph 3. below, professional services include:

a.  Preparing, approving, or failing to prepare or approve maps, shoe drawings, opinions, reports, surveys, field orders, change orders or drawings and specifications; and

b.  Supervisory or inspection activities performed as part of any

related architectural or engineering activities.
3. Professional services do not include services within construction means, methods, techniques, sequences and procedures employed by you in connection with your operations in your capacity as a construction contractor.

(Doc. 47-3, p. 49).

Lastly, the exclusion entitled "Absolute Exclusion for Fraud, Misrepresentation, Deceit or Suppression or Concealment of Fact" provides as follows:

This insurance does not apply to any claim or lawsuit for damages arising out of fraud, misrepresentation, deceit, suppression or concealment of fact, whether intentional, unintentional, innocent, negligent, willful, malicious, reckless or wanton, including, but not limited to an action or lawsuit demanding or seeking damages or recover based on direct liability, vicarious liability or agency principles. We will not make any payment if those payments arise out of any claim or lawsuit excluded by this endorsement. We have no duty to defend any insured against any claim or lawsuit for damages to which this insurance does not apply.
This exclusion applies regardless of:
1. Whether such operations are or were conducted by you or on your behalf; or
2. Whether the operations are or were conducted for you or for others.

(Doc. 47-3, p. 41).

## DISCUSSION

### A. Summary Judgment Standard

Federal Rule of Civil Procedure 56(a) provides that summary judgment shall be granted: "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." The trial court's function is not "to weigh the evidence and determine the truth of the matter but to

8

determine whether there is a genuine issue for trial." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986).   "The mere existence of some evidence to support the non-moving party is not sufficient for denial of summary judgment; there must be 'sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party.'" Bailey v. Allgas, Inc., 284 F.3d 1237, 1243 (11th Cir. 2002) (quoting Anderson, 477 U.S. at 249). "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." Anderson, at 249-250. (internal citations omitted).

The basic issue before a court on a motion for summary judgment is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." See Anderson, 477 U.S. at 251-252.  The moving party bears the burden of proving that no genuine issue of material fact exists. O'Ferrell v. United States, 253 F.3d 1257, 1265 (11th Cir. 2001).  In evaluating the argument of the moving party, the court must view all evidence in the light most favorable to the non-moving party, and resolve all reasonable doubts about the facts in its favor. Burton v. City of Belle Glade, 178 F.3d 1175, 1187 (11th Cir. 1999).   "If reasonable minds could differ on the inferences arising from undisputed facts, then a court should deny summary judgment." Miranda v. B&B Cash Grocery Store, Inc., 975 F.2d 1518, 1534 (11th Cir. 1992) (citing Mercantile Bank & Trust v. Fidelity & Deposit Co., 750 F.2d 838, 841 (11th Cir. 1985)).

Once the movant satisfies his initial burden under Rule 56(c), the non-moving

party "must make a sufficient showing to establish the existence of each essential element to that party's case, and on which that party will bear the burden of proof at trial." Howard v. BP Oil Company, 32 F.3d 520, 524 (11th Cir. 1994)(citing Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986)).  Otherwise stated, the non-movant must "demonstrate that there is indeed a material issue of fact that precludes summary judgment."  See Clark v. Coats & Clark, Inc., 929 F.2d 604, 608 (11th Cir. 1991).  The non-moving party "may not rely merely on allegations or denials in its own pleading; rather, its response .... must be by affidavits or as otherwise provided in this rule be set out specific facts showing a genuine issue for trial." Vega v. Invsco Group, Ltd., 2011 WL 2533755, *2 (11th Cir. 2011).  "A mere 'scintilla' of evidence supporting the [non-moving] party's position will not suffice; there must be enough of a showing that the jury could reasonably find for that party."  Walker v. Darby, 911 F.2d 1573, 1577 (11th Cir. 1990) (citation omitted). "[T]he nonmoving party may avail itself of all facts and justifiable inferences in the record taken as a whole." Tipton v. Bergrohr GMBH-Siegen, 965 F.2d 994, 998 (11th Cir. 1992).  "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574 at 587 (1986) (internal quotation and citation omitted).

**B. Policy Coverage**

EMCC asserts that the policy does not cover the claims asserted in the underlying lawsuit.  "In Alabama, insurers have the right, absent statutory

provisions to the contrary, to limit their liability and write policies with narrow coverage." Turner v. U.S. Fidelity and Guar. Co., 440 So.2d 1026, 1027 -1028 (Ala. 1983) (citation omitted).  Under Alabama law, the insured bears the burden of establishing coverage by demonstrating that a claim falls within the policy, see Colonial Life & Accident Ins. Co. v. Collins, 280 Ala. 373, 194 So.2d 532, 535 (1967), while the insurer bears the burden of proving the applicability of any policy exclusion. See U.S. Fidelity & Guar. Co. v. Armstrong, 479 So.2d 1164, 1168 (Ala.1985).   If an insurance policy is ambiguous in its terms, the policy must be construed liberally in favor of the insured, and exceptions to coverage must be interpreted as narrowly as possible in order to provide maximum coverage to the insured. Altiere v. Blue Cross & Blue Shield, 551 So.2d 290, 292 (Ala. 1989).  The Court notes that an "insurer's duty to defend is more extensive than its duty to [indemnify]." Porterfield v. Audubon Indem. Co., 856 So.2d 789, 791 (Ala. 2002) (quoting United States Fid. & Guar. Co. v. Armstrong, 479 So.2d 1164, 1168 (Ala. 1985)).  Generally, an insurer's obligations with respect to providing a defense to its insured in an action brought by a third-party are determined by the allegations contained in the third-party's complaint. Ladner and Company, Inc. v. Southern Guaranty Ins. Co., 347 So.2d 100, 102 (Ala. 1977) (citations omitted).  "If the allegations of the injured party's complaint show an accident or occurrence which comes within the coverage of the policy, the insurer is obligated to defend regardless of the ultimate liability of the insured." Id. (citing Goldberg v. Lumber Mutual Casualty Ins. Co., 297 N.Y. 148, 77 N.E.2d 131 (1948)).  Thus, if there is any

11

potential for coverage arising out of the allegations, then EMCC would have at least

a duty to defend.

> However, a court is not constrained to consider only the allegations of
> the underlying complaint, but may additionally look to facts which
> may be proved by admissible evidence. <u>Tanner</u> [v. State Farm Fire &
> Cas. Co.</u>, 874 So.2d 1058, 1064 (Ala.2003)]; <u>see</u> <u>also</u> <u>Hartford Cas. Ins.
> Co. v. Merchants & Farmers Bank</u>, 928 So.2d 1006, 1010 (Ala.2005) (in
> deciding whether the allegations of the complaint show a covered
> accident or occurrence, "the court is not limited to the bare allegations
> of the complaint ... but may look to facts which may be proved by
> admissible evidence") (citations omitted). The test, ultimately, is this:
> "The insurer owes no duty to defend only if neither does the complaint
> against the insured allege a covered accident or occurrence nor does
> the evidence in the litigation between insurer and insured prove a
> covered accident or occurrence." <u>Tanner</u>, 874 So.2d at 1065.

<u>Essex Ins. Co. v. Foley</u>, 2011 WL 1706214, *3 (S.D. Ala. May 5, 2011).  If both

covered claims and non-covered claims are pleaded, then the insurer's duty to

defend extends at least to those covered claims. <u>Tanner</u>, 875 So.2d at 1065.

In the instant case, EMCC asserts that coverage does not exist because 1)

there is no claim for property damage; 2) there is no claim for bodily injury; 3) there

is no occurrence; and 4) many of the claims do not constitute an accident. As stated

above, Defendants have the burden of showing coverage exists.  However, as this is

EMCC's motion for summary judgment, it is EMCC's burden of showing that

looking at the facts in the light most favorable to the Nelsons and Kenny Hayes

Homes, there is no genuine dispute as to any material fact and that the movant is

entitled to judgment as a matter of law.

### 1. Property Damage

EMCC contends that there is no claim for property damage as defined by the

policy.  Defendants disagree, asserting that the water damage to the house constitutes property damage.  Under the policy "property damage" includes "[p]hysical injury to tangible property, including all resulting loss of use of that property."  Defendants assert that the water damage to the walls constitutes property damage, but EMCC contends that a mere change in color of the wall is not a physical injury.  Defendants also assert that they believe there is more damage on the interior of the wall, damage that may be much greater than what is seen on the exterior.  Defendants report that they have not been able to discover the full extent of the damages because investigating and repairing the walls would raise spoliation issues.  The Nelsons report that they intend to begin repairs, after giving notice to the other parties, at which time they will presumably discover the full of extent of the damage.  EMCC contends that any allegation that there is damage to the interior of the wall is merely speculation.  The Court finds that while the damage to the exterior of the walls may seem small, it is damage to physical property nonetheless.  EMCC asserts that the damage is not a physical injury because the change in color does not alter the material substance of the wall.  However, a physical injury includes any wrong or damage done to another's property.  See Oak Ford Owners Ass'n v. Auto-Owners Ins. Co., 510 F. Supp. 2d 812, 816 (M.D. Fla. 2007) (finding negative environmental impact to land was a physical injury).  "[A]n item need not be completely destroyed in order to render it damaged." Id. at 817.  There is allegedly a significant change in the condition of the walls that would require physical work on the property for it to be remedied.  Thus, the Court finds

that even if only the alleged exterior damage to the walls is considered, there is a physical injury to the property.

### 2. Bodily Injury

Defendants assert that their claim for mental anguish and emotional distress constitutes bodily injury.  The policy definition of "bodily injury" includes "sickness or disease sustained by a person."  "Mental anguish" or "emotional distress" is not expressly excluded by the policy, thus, construing the language against the insurer, "mental anguish" and "emotional distress" are "necessarily included within the terms 'sickness' or 'disease' ". Morrison Assur. Co. v. N. Am. Reinsurance Corp., 588 F. Supp. 1324, 1327 (N.D. Ala. 1984) aff'd sub nom. Morrison v. N. Am., 760 F.2d 279 (11th Cir. 1985).  Accordingly, the Court finds that the Nelsons' alleged mental anguish might be covered as a bodily injury under the policy.

### 3. Occurrence

EMCC contends that the water damage alleged in the underlying action does not constitute an "occurrence" as required by the policy.  The policy states that it applies to bodily injury and property damage only if the bodily injury or property damage is caused by an "occurrence."   The policy defines "occurrence" as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions." (Doc. 47-3, p. 38).  What constitutes an "accident" is not defined by the policy.  Where an insurance policy defines certain words or phrases, a court must defer to the definition provided by the policy. Twin City Fire Ins. Co. v. Alfa Mut. Ins. Co., 817 So.2d 687 (Ala.2001).   However, because the

instant policy does not define "accident," we look outside the policy for the meaning

of the word.  Black's Law Dictionary defines "accident" as "[a]n unintended and

unforeseen injurious occurrence; something that does not occur in the usual course

of events or that could not be reasonably anticipated." Black's Law Dictionary 15

(7th ed. 1999).  "Accident" has also been defined as "an unexpected happening

rather than one occurring through intentional design or an event which takes place

without one's foresight or expectation or design." Liberty Mut. Ins. Co. v.

Wheelwright Trucking Co., Inc., 851 So.2d 466, 480  (Ala. 2002) (citations and

internal quotations omitted).  "[T]he term 'accident' does not necessarily exclude

human fault called negligence." United States Fidelity and Guar. Co. v. Bonitz

Insulation Co. of Alabama, 424 So.2d 569, 571 (Ala. 1982).

       EMCC asserts that it is not required to indemnify an insured for the costs of

repairing or replacing faulty work.  However, courts have found that faulty

workmanship that causes a leak can, at least in some circumstances, result in an

occurrence.  The Bonitz Court, cited above, held that because Bonitz was "merely

charged with negligence in installing the roof, there is no evidence that they either

expected or intended the roof to start leaking" and therefore, the injury satisfied the

requirement of an "occurrence." Id.  Likewise, in Moss v. Champion Ins. Co, a roofer

was sued for water damage that occurred while a roof was being replaced. Moss v.

Champion Ins. Co., 442 So.2d 26 (Ala. 1983).  That court stated that it is clear from

our cases that the term "accident" in such a policy does not necessarily exclude

human fault called negligence. Id. at 28 (citing Bonitz supra).  The Moss Court held

15

that while the roof was indeed intentionally removed, the resulting water damage was not intended, and, therefore, that there was an "occurrence" within the general liability policy terms.

Where the alleged damage is the faulty workmanship itself, there is no occurrence. Town & Country Prop., L.L.C. v. Amerisure Ins. Co., 111 So.3d 699, 706 (Ala. 2011) (citing United States Fid. & Guar. Co. v. Warwick Dev. Co., 446 So.2d 1021 (Ala. 1984)). A CGL policy is generally understood "to protect an insured from bearing financial responsibility for unexpected and accidental damage to people or property while a performance bond is intended to insure the contractor against claims for the cost of repair or replacement of faulty work." Id. at 707 (citations and internal quotations omitted). However, "faulty workmanship may lead to an occurrence if it subjects personal property or other parts of the structure to 'continuous or repeated exposure' to some other 'general harmful condition' (e.g., the rain in Moss) and, as a result of that exposure, personal property or other parts of the structure are damaged. Id. at 706. In the instant case, the alleged damage is to another part of the structure and cannot be remedied merely by correcting the faulty workmanship that caused the leaks. As such, the Court finds that the alleged water damage was caused by an occurrence.

Likewise, to the extent the Nelsons' alleged mental anguish is caused by water leaking into their home, that injury is also caused by an occurrence. The Nelsons both allege they suffered emotional distress and Mr. Nelson specifically testified that he experienced emotional distress resulting from the water leaking

into the house (rather than solely from the monetary and other contract issues claimed).  The Court finds that Defendants have at least raised a significant issue of fact with regard to whether their alleged injuries were caused by an occurrence.

### 4. Particular Claims

EMCC asserts that certain claims asserted in the underlying action clearly do not fall under the CGL policy.  The Court would agree, and Kenny Hayes Homes has conceded, that the claims for wantonness, willfulness, deceptive trade practices and fraud do not fall under the CGL policy.  Defendants dispute that the claims for breach of contract, breach of warranty, negligence, and negligent hiring or supervision are not covered by the policy.

EMCC essentially makes the same arguments here as it does with regard to whether the alleged damages were caused by an occurrence.  EMCC asserts that the claimed damages were caused by faulty workmanship and that there is no coverage for such intended acts.  However, as explained above, the Court finds that while water was not prevented from leaking into the house because of the alleged faulty workmanship, it was the rain and water leakage itself that ultimately caused the damages.  "When a contractor performs faulty work (that is, fails to use reasonable skill), there is no accident or occurrence, but, when the contractor's faulty work creates a condition that in turn damages property, under Alabama law, that damage results from an accident." Pennsylvania Nat. Mut. Cas. Ins. Co. v. St. Catherine of Siena Par., 790 F.3d 1173, 1178 (11th Cir. 2015).

The Court stated above that the term "accident" could include allegations of

negligence.  United States Fidelity and Guar. Co. v. Bonitz Insulation Co. of Alabama, 424 So.2d 569, 571 (Ala. 1982).  While Kenny Hayes Homes intentionally performed certain duties pursuant to its agreement with the Nelsons, there has been no evidence presented that Kenny Hayes Homes intended for water to leak into the house when it rained or for the walls to be damaged or for the Nelsons to be harmed in any way. The CGL policy applies to the claims for breach of contract, breach of warranty, negligence, and negligent hiring or supervision to the extent the covered damages arose from the conduct alleged in those claims

## C. Exclusions

As explained above, the insurer bears the burden of demonstrating that exclusions apply. Acceptance Ins. Co. v. Brown, 832 So.2d 1, 12 (Ala. 2001) (citing Fleming v. Alabama Farm Bureau Mut. Cas. Ins. Co., 293 Ala. 719, 310 So.2d 200, 202 (1975)). EMCC contends that the claims are excluded under 1) subsections 5 and 6 of the Damage to Property Exclusion, 2) the Contractual Liability Exclusion, 3) the Damage to Impaired Property or Property Not physically Injured Exclusion, 4) the Contractors-Professional Liability Exclusion and 5) the Absolute Exclusion for Fraud, Misrepresentation, Deceit or Suppression or Concealment of Fact.

### 1. Damage to Property Exclusion

Subsection 5 of the Damage to Property Exclusion excludes property damage to "[t]hat particular part of real property on which you or any contractors or subcontractors working directly or indirectly on your behalf are performing operations, if the 'property damage' arises out of those operations."  The alleged

property damage here arose from operations performed by Kenney Hayes Homes or its contractors and subcontractors.  However, EMCC has not offered any cases that excluded coverage under similar language where, as here, an occurrence was found to have occurred and the alleged damage did not occur on the portion of the property where the alleged defective work was performed.  The alleged damage in this case did not arise from work being performed on the property that was damaged.  Instead, the alleged faulty construction caused damage to an otherwise non-defective portion of the property.  Accordingly, the Court finds that subsection 5 of the Damage to Property Exclusion does not apply in this case.

The Damage to Property Exclusion also excludes "[t]hat particular part of any property that must be restored, repaired or replaced because 'your work' was incorrectly performed on it."   The policy also provides that "this exclusion does not apply to 'property damage' included in the "products completed operations hazard", which is defined in the policy.

"The purpose of the 'your work' exclusion is to prevent coverage for the insured's own faulty workmanship, a normal risk associated with operating a business." Mid-Continent Cas. Co. v. Advantage Med. Elecs., LLC, 2015 WL 6828722, at *7 (Ala. Nov. 6, 2015).  However, in the instant case, the damaged property does not need to be restored because of work incorrectly performed on it, but because of work that was allegedly incorrectly performed on other portions of the property.  Thus, under the language of the policy the exclusion does not apply. As further explained by the Alabama Supreme Court:

Further, we note that exclusion j(6) does not exclude coverage for all property damage caused by an insured's faulty workmanship. Rather, the meaning of exclusion j(6) is plain that property damage is excluded from coverage under that provision only as to the "particular part[s]" of the property that were themselves the subject of the defective work. In interpreting this exclusion, the United States Court of Appeals for the Fifth Circuit has stated: "[E]xclusion j(6) bars coverage only for property damage to parts of a property that were themselves the subject of defective work by the insured; the exclusion does not bar coverage for damage to parts of a property that were the subject of only nondefective work by the insured and were damaged as a result of defective work by the insured on other parts of the property." <u>Mid–Continent Cas. Co. v. JHP Dev., Inc.</u>, 557 F.3d 207, 215 (5th Cir.2009).

<u>Mid-Continent Cas. Co. v. Advantage Med. Elecs., LLC</u>, __ So.3d__, 2015 WL 6828722, at *9.  Because the alleged property damage here was not to the particular parts of the property that were themselves the subject of the defective work, the exclusion does not apply.

## 2) Contractual Liability Exclusion

EMCC contends that the claims in the underlying action are excluded by the "Contractual Liability" exclusion in the policy.  The Contractual Liability clause excludes " '[b]odily injury' or 'property damage' for which the insured is obligated to pay damages by reason of the assumption of liability in a contract or agreement." The Eleventh Circuit recently found that, under Alabama law, such language "was intended to exclude claims arising out of indemnity agreements only." <u>Pennsylvania St. Catherine of Siena Parish</u>, 790 F.3d 1173, 1182 (citing <u>Townsend Ford, Inc. v. Auto-Owners Ins. Co.</u>, 656 So.2d 360, 364 (1995)).  That court further found that this meaning applies regardless of whether the injured party brings a breach of contract claim based on the breach of an express or implied warranty. <u>Id.</u>

EMCC cites cases, including cases from this Court, which held that such contractual liability exclusions bar coverage for all claims sounding in contract.  See e.g. Assurance Co. of America v. Admiral Ins. Co., 2011 WL 1897589 (S.D. Ala. May 18, 2011) (citing U.S. Fid. & Guar. Co. v. Nat'l Tank and Mach. Works, Inc., 402 So.2d 925 (Ala. 1981) & Carter v. Cincinnati Ins. Co., 435 So.2d 42 (Ala 1983)).[1]  However, as stated in Penn. St. Catherine of Siena Parish, "we are bound to follow the latest statement of state law by the state supreme court." Penn. St. Catherine of Siena Parish, 790 F.3d at 1182.  EMCC has offered no authority that persuades this Court that the holding of the Supreme Court of Alabama in Townsend Ford should not apply here.  In the instant case, the parties did not enter into an indemnity agreement.  The parties entered into an agreement for the construction of the Nelsons' home and there has been no suggestion that Kenny Hayes Homes assumed any more or different liability than is standard for residential construction contracts.  Accordingly, the Court finds that the Contractual Liability exclusion does not apply.

### 3) Damage to Impaired Property or Property Not physically Injured

EMCC contends that the "Damage To Impaired Property Or Property Not Physically Injured" provision excludes coverage here because the damages sought are for a defect or deficiency or inadequacy in the builder's work.  The clause excludes "property damage" to "impaired property" or property that has not been

---

[1] In Assurance Co. of America, this Court did not address the Alabama Supreme Court's 1995 case, Townsend Ford.

physically injured, arising out of either:

> (1)    A defect, deficiency, inadequacy or dangerous condition in "your
> product" or "your work"; or
> (2)    A delay or failure by you or anyone acting on your behalf to
> perform a contract or agreement in accordance with its terms.

Under a plain reading of this language, the exclusion only applies where the damaged property has not been physically injured.  As this Court has already found that the alleged injury to the walls constitutes a physical injury, the exclusion does not apply.  Additionally, the exclusion would not bar the Nelsons' claim that they have suffered bodily injury in the form of mental and emotional distress.

### 4) Contractors-Professional Liability Exclusion

EMCC contends that the Nelsons' claims are barred by the "Contractors - Professional Liability" exclusion because they arise out of the builder's rendering or the builder's failure to render professional services.  However, the exclusion states that "[p]rofessional services do not include services within construction means, methods, techniques, sequences and procedures employed by you in connection with your operations in your capacity as a construction contractor."  EMCC has not shown that the actions complained of in the underlying case fall outside the above language.  EMCC points to Ms. Nelson's testimony at her deposition wherein she answered "Yes" when asked if she was seeking damages arising out of Kenny Hayes Homes' rendering or failure to render professional services. (Doc. 47-8, p. 5). However, there has been no suggestion that Ms. Nelson has a legal background or education and understood the legal conclusion she was being asked to make.

Moreover, even if the Nelsons are seeking damages for the rendering or failure to render professional services, that does not preclude them from seeking other damages as well.  Ms. Nelson did not state that all of the damages they seek are for the rendering or failure to render professional services.  Nor did she specify that the emotional distress damages or the water damages they seek arise from Kenny Hayes Homes' rendering or failure to render professional services.  The Court finds that EMCC has not shown that the covered damages are excluded by the Professional Liability exclusion.

### 5) Absolute Exclusion for Fraud, Misrepresentation, Deceit or Suppression or Concealment of Fact

The "Absolute Exclusion for Fraud, Misrepresentation, Deceit or Suppression or Concealment of Fact" provides that the CGL policy does not apply to:

> any claim or lawsuit for damages arising out of fraud, misrepresentation, deceit, suppression or concealment of fact, whether intentional, unintentional, innocent, negligent, willful, malicious, reckless or wanton, including, but not limited to an action or lawsuit demanding or seeking damages or recover based on direct liability, vicarious liability or agency principles.

Kenny Hayes Homes has conceded that the claims for wantonness, willfulness, fraud and deceptive trade practices are not covered by the policy.  EMCC has not shown that this exclusion would apply to any other claims asserted in the underlying action.

## CONCLUSION

For the reasons stated above, the Court finds that Plaintiff has not shown as a matter of law that it is entitled to a declaration that it does not owe a duty to

23

defend or indemnify Kenny Hayes Custom Homes, LLC, Kenny Hayes and/or David Chancellor in the underlying state court action.  Accordingly, Plaintiff's motion for summary judgment (Doc. 47) is **DENIED**.

      **DONE** and **ORDERED** this 9th day of Febuary, 2016.

/s/  Callie V. S. Granade
UNITED STATES DISTRICT JUDGE